ARNOLD, Appellee,

v.

AMERICAN NATIONAL RED CROSS et al., Appellants;

University Hospitals of Cleveland Blood Bank et al.

[Cite as *Arnold v. Am. Natl. Red Cross* (1994), 93 Ohio App.3d 564.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65168.

Decided March 14, 1994.

*James W. Burke, Jr., Peter Hull* and *Brian McNamee,* for appellee.

*Hugh E. McKay* and *Patricia A. Screen; James S. Oliphant* and *Joyce D. Edelman; Bruce M. Chadwick, Fern P. O'Brian* and *L. Hope O'Keefe;* and *Edward L. Wolf,* Associate General Counsel, American Red Cross, for appellants.

DONALD C. NUGENT, Judge.

This is an appeal from the decision of the Cuyahoga County Court of Common Pleas compelling the defendant-appellant, American National Red Cross, to supply the plaintiff-appellee, Steven Arnold, the name of the donor of blood unit No. 42 FY–04453, also known as "donor 16," as well as the donor's last known address, Social Security number and date of death.

Appellee initiated the present action through the filing of his complaint on February 21, 1989. Appellee named the American National Red Cross, American Red Cross Association Greater Cleveland Chapter, and American Red Cross Northern Ohio Regional Blood Services (hereinafter collectively referred to as the "Red Cross"), and the University Hospitals of Cleveland Blood Bank and University Hospitals of Cleveland (hereinafter collectively referred to as "University Hospitals") as defendants. The gist of appellee's complaint is that the

American Red Cross was negligent and careless in providing HIV-infected blood for transfusion and that University Hospitals was negligent and careless in administering appellee blood transfusions with blood containing the HIV virus. Appellee alleges that he received the transfusion of blood infected with the HIV virus in January 1985. Appellee further alleges that as a direct and proximate result of the defendants' negligence, he contracted the HIV virus from the blood transfusion administered to him. Appellee subsequently discovered that he had the HIV virus in February 1987.

During the course of pretrial discovery, a dispute arose concerning plaintiff's request for production of documents. Appellee filed a motion seeking to compel the production of documents in order to discover the identity of volunteer blood donors whose blood had been transfused into appellee in January 1985. Appellee also sought production of all medical records for the last five years of "donor 16," whose identity was not revealed. "Donor 16's" death certificate, however, indicated that he had died in 1986. Subsequently, the American National Red Cross moved the trial court for an order to prevent the disclosure of the identity of the volunteer blood donor whose blood is implicated in the transmission of the HIV virus to the plaintiff. In response, the trial court issued the following order:

"The Defendant, American National Red Cross, having filed its Motion for Protective Order, and the same being duly considered by this court, the Court now orders as follows:

"IT IS, THEREFORE, ORDERED that the Red Cross shall forthwith provide plaintiff's counsel with the name of the donor of blood unit no. 42 FY–04453, also known as donor '16.' Red Cross shall also provide Plaintiff's counsel with the donor's last known address; Social Security number and date of death, which was included on his death certificate.

"IT IS FURTHER ORDERED that Plaintif[f] and [his] counsel will not divulge the donor's identity to anyone else, [and] will not directly or indirectly contact the donor's family.

"IT IS FURTHER ORDERED that disclosing any information to a retained expert, Plaintiff's counsel will [e]nsure that such expert is fully aware of the protection afforded by this order and that such expert agrees to abide by its terms. Any papers filed by the parties to this action relating to the donor which identity [*sic*] the donor by name shall be filed under seal. In lieu of filing pleadings under seal, papers may be filed in the public record which refer to such person as 'the donor' or a similar designation."

The Red Cross timely appeals,[1] raising the following assignments of error:

"I. The court of common pleas erred in ordering donor discovery because plaintiff failed to demonstrate a compelling need for discovery of the donor's identity, as required by Ohio Rev.Code Ann. § 3701.243.

"II. The court of common pleas erred in ordering donor disclosure because the constitutional privacy rights of the donor and his family outweigh plaintiff's asserted minimal interest in obtaining the donor's identity.

"III. The court of common pleas erred in ordering donor discovery because plaintiff's asserted interest in obtaining the donor's identity is outweighed by society's interest in, and need for, an adequate and safe blood supply."

I

As an initial matter, this court must first determine whether an order compelling disclosure of the name, last known address, Social Security number and date of death of a donor of blood infected with the HIV virus is a final, appealable order. Section 3(B)(2), Article IV of the Ohio Constitution provides courts of appeals with appellate jurisdiction over final orders. Pursuant to R.C. 2505.02, a final, appealable order is "an order that affects a substantial right made in a special proceeding * * *."

At the time in which appellants filed their notice of appeal, a discovery order such as the one *sub judice* was clearly a final, appealable order. See *Humphry v. Riverside Methodist Hosp.* (1986), 22 Ohio St.3d 94, 22 OBR 129, 488 N.E.2d 877 (decision of trial court compelling disclosure of information concerning hospital-patient confidentiality and statutory privilege is a final, appealable order); and *Doe v. Univ. of Cincinnati* (1988), 42 Ohio App.3d 227, 538 N.E.2d 419 (decision of trial court compelling defendants to supply plaintiff with name, address and telephone number of donor of blood infected with HIV virus is a final, appealable order). However, both *Humphrey* and *Doe* rely on the balancing test of *Amato*

---

1. The following appeal is necessary although the record reveals that the Red Cross agreed to stipulate that the donor of blood transfused to appellee in January 1985 ("donor 16") was HIV infected and that appellee contracted HIV from this January 1985 transfusion in exchange for plaintiff's counsel's prior commitment that he would not seek further donor discovery. At oral argument, appellants' counsel reiterated their willingness to enter the above stipulation. Additionally, appellants' counsel announced that the Red Cross would agree to contact the donor's family and seek a release in order to obtain the donor's medical records, without disclosing any identifying information, in exchange for appellee's counsel's prior commitment that he would not seek further donor discovery. While this may be a viable option on remand, appellants' position at oral argument must be reconciled with footnote 2 of their motion for a protective order in which they proclaim that the Red Cross has *never* requested a release for medical records from a donor or a donor's family. As will be discussed, *infra*, on remand, the trial court should exercise its continuing discretion in fashioning an appropriate protective order in a manner consistent with this opinion.

*v. Gen. Motors Corp.* (1981), 67 Ohio St.2d 253, 21 O.O.3d 158, 423 N.E.2d 452, which was subsequently overruled by the Ohio Supreme Court in *Polikoff v. Adam* (1993), 67 Ohio St.3d 100, 616 N.E.2d 213.

In *Amato,* the Supreme Court ruled that the determination of "whether an order is made in a special proceeding is resolved through a balancing test. This test weighs the harm to the 'prompt and orderly disposition of litigation,' and the consequent waste of judicial resources, resulting from the allowance of an appeal, with the need for immediate review because appeal after final judgment is not practicable." *Amato, supra,* 67 Ohio St.2d at 258, 21 O.O.3d at 161, 423 N.E.2d at 456; see, also, *Nelson v. Toledo Oxygen & Equip. Co.* (1992), 63 Ohio St.3d 385, 387, 588 N.E.2d 789, 790–791.

In *Polikoff, supra,* the Supreme Court abandoned the *Amato* balancing test due to inconsistent application and increased criticism. In its place, the Supreme Court, in the interest of justice, clarity and judicial economy, returned to a more historical approach in determining whether an order was made in a special proceeding. The Supreme Court in *Polikoff* was asked to determine whether an order denying a motion to dismiss a shareholders' derivative suit on the grounds that the shareholders failed to make the requisite demand on the board of directors for the relief sought in court pursuant to Civ.R. 23.1 was a final, appealable order. The Supreme Court answered the question in the negative. In its syllabus, the court held that "[o]rders that are entered in actions that were recognized at common law or in equity and were not specially created by statute are not orders entered in special proceedings pursuant to R.C. 2505.02."

▮ Under the *Polikoff* analysis for determining whether an order is entered in a special proceeding, an appellate court must first ask whether the underlying action was recognized in equity, at common law, or established by special legislation. *Polikoff, supra,* 67 Ohio St.3d at 107, 616 N.E.2d at 217–218. Next, an appellate court must look at the nature of the relief sought. *Id.* Where an aggrieved party files a special petition seeking a remedy that was conferred upon that party by an Ohio statute or if the proceeding represents what is essentially an independent judicial inquiry, the order is made in a special proceeding. *Id.* The court in *Polikoff* first noted that shareholder derivative suits originated more than one hundred years ago as actions in equity. Next, the court concluded that the aggrieved party did not file a special petition seeking a remedy authorized by statute and the proceeding did not represent an essentially independent judicial inquiry. Therefore, the Supreme Court concluded that an order denying a motion to dismiss a shareholder derivative suit on the grounds that the appellees failed to make the requisite prelitigation demand upon the directors was not an order entered in a special proceeding. *Id.* Thus, the order was not final and appealable.

■ Under *Polikoff*, inquiry into whether the underlying action was recognized at common law or in equity does not end a court's analysis. In a decision rendered the same day as *Polikoff*, the Supreme Court made it clear that an order entered in an action recognized at common law or in equity may nonetheless be an order entered in a "special proceeding." See *Bell v. Mt. Sinai Med. Ctr.* (1993), 67 Ohio St.3d 60, 616 N.E.2d 181. The special proceeding in *Bell* was an action for prejudgment interest stemming from a favorable judgment in the underlying medical malpractice action. In the prejudgment interest proceeding, plaintiff's counsel subpoenaed defendants' attorneys and directed them to bring various documents which the defendants contended were privileged. The trial court granted defendants' motion for a protective order to the extent that the subpoenaed records would not be released to plaintiff pending an *in camera* inspection and a determination that the records were not privileged. Nonetheless, defendants' attorneys failed to appear at the hearing and were subsequently held in contempt of court. On appeal, the court of appeals dismissed for lack of a final, appealable order. The Supreme Court held that an action for prejudgment interest pursuant to R.C. 1343.03(C) constitutes a special proceeding inasmuch as the right to obtain prejudgment interest is purely statutory in nature and was unavailable at common law. *Bell, supra,* at 63, 616 N.E.2d at 183–184. Moreover, the court concluded that protection of attorney-client confidences and, particularly, attorney work product invokes a substantial right. *Id.* However, the court concluded that an order directing appellants to submit to an *in camera* inspection materials which they contend to be privileged does not affect a substantial right. The court noted that "[a]n order which affects a substantial right has been perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future." Because the order in *Bell* did not compel immediate disclosure to the *opposing party* of the alleged privileged materials, the order did not effect a substantial right. Therefore, the order was not final and appealable. The court then distinguished *Humphry v. Riverside Methodist Hosp., supra,* and *State v. Port Clinton Fisheries, Inc.* (1984), 12 Ohio St.3d 114, 12 OBR 157, 465 N.E.2d 865, on the basis that the orders being appealed required disclosure of alleged privileged information to the opposing party.[2] In those cases, in absence of immediate review of the order, the parties would be denied effective relief, since the privileged information would be disclosed to the opposing party. However, in *Bell,* the appellants would not be denied effective relief until such time as the trial court ordered disclosure to the opposing party. At that time, a substantial right would be affected.

---

2. The decision in *Bell* should not be read to approve of the *Humphry* and *Port Clinton Fisheries* decisions, inasmuch as those decisions relied on *Amato*. See *Polikoff, supra.* However, *Humphry* and *Port Clinton Fisheries* retain relevance to the extent that a "substantial right" is affected.

■ In analyzing *Polikoff* and *Bell*, it becomes apparent that the issue of whether the underlying action was recognized at common law or in equity is only the first inquiry. Each case must be decided by reviewing the "specific proceeding in question" leading to the order being appealed. *Polikoff, supra*, 67 Ohio St.3d at 107, 616 N.E.2d at 218. The ultimate inquiry, then, is whether the aggrieved party filed a special petition seeking a right or remedy that was conferred upon that party by Ohio statute or whether the specific proceeding represents what is essentially an independent judicial inquiry. *Polikoff, supra.*

■ Against this backdrop, it must be remembered that discovery orders have long been recognized as interlocutory, non-final appealable orders. *Kennedy v. Chalfin* (1974), 38 Ohio St.2d 85, 88, 67 O.O.2d 90, 91–92, 310 N.E.2d 233, 235; *In re Coastal States Petroleum* (1972), 32 Ohio St.2d 81, 61 O.O.2d 333, 290 N.E.2d 844; and *Klein v. Bendix–Westinghouse Co.* (1968), 13 Ohio St.2d 85, 42 O.O.2d 283, 234 N.E.2d 587. However, neither the *Kennedy, Coastal States* nor *Klein* decisions dealt with a situation in which a litigant appealed a discovery order and asserted a statutory privilege.

■ The issue in the present case is whether a discovery order compelling disclosure of confidential or privileged materials is made in a special proceeding where a litigant invokes a statutorily conferred privilege in opposing the discovery order. The Supreme Court came close to answering this question in *Bernbaum v. Silverstein* (1980), 62 Ohio St.2d 445, 16 O.O.3d 461, 406 N.E.2d 532. In *Bernbaum*, the trial court overruled a motion to disqualify plaintiff's counsel on the basis that members of plaintiff's counsel's law firm once represented the defendants. The appellate court dismissed the defendant's appeal on the basis that there was no final, appealable order. The Supreme Court agreed and noted that the motion to disqualify was a request for ancillary relief. The court disposed of appellants' claims that the alleged disclosure of confidences resulting from plaintiff's counsel having represented the defendants in previous matters did not weigh in favor of immediate review when considered against the resulting delay in a final determination on the merits. While this analysis was later criticized by the court in *Polikoff*, the court nonetheless approved the conclusion that the order was not entered in a special proceeding. See *Polikoff, supra.*

A cursory analysis of *Polikoff, Bell* and *Bernbaum* might lead to the conclusion that immediate appellate review of a discovery order compelling disclosure of confidential or privileged materials conferred upon a party pursuant to a statute is available in a prejudgment interest proceeding in an underlying medical malpractice action but *not* available in the underlying medical malpractice action itself. This court can perceive of no justification for such an unfair conclusion, and we are not required to decide that question in this case.

However, when the discovery order compelling disclosure of privileged or confidential information is considered in light of a specific statute conferring such privilege, a different conclusion should be reached. In applying *Polikoff* and *Bell* in a fashion consistent with the interests of justice, clarity and judicial economy, this court concludes that the special proceeding is the invocation of the statutory privilege prohibiting disclosure of HIV test results or diagnosis.

The statutory privilege generally prohibiting disclosure of HIV test results or diagnosis is found in R.C. 3701.243. Specifically, R.C. 3701.243(C)(2) allows a person or agency who considers it necessary to disclose the results of an HIV test of a specific individual in an action in which it is a party to file a motion seeking authority to disclose such test results. By implication, then, a party may file a motion preventing such disclosure as well. In the present case, appellants filed a motion for a protective order when confronted with appellee's request for disclosure of the volunteer blood donor's identity. Appellants invoked the statutory privilege by way of motion or special proceeding, and the trial court was required to make what is essentially an independent judicial inquiry into whether plaintiff's need for such information can be considered "compelling." R.C. 3701.243(C). Finally, it cannot be said that by invoking a statutory privilege, a party is merely seeking ancillary relief. *Bernbaum, supra.* Rather, the right pursuant to statute is substantive in nature and not ancillary to the underlying action.

Therefore, this court holds that a discovery order compelling disclosure of the name, last known address, Social Security number, and date of death of a voluntary donor of blood allegedly infected with the HIV virus is an order which effects a substantial right made in a special proceeding. Applying *Polikoff* and *Bell,* this court concludes that appellants' motion for a protective order asserting the statutory privilege, see R.C. 3701.243, against disclosure of HIV test results or diagnosis is a special petition seeking a remedy conferred by statute and is a proceeding which represents what is essentially an independent judicial inquiry into whether the statutory privilege applies.

## II

Although appellants raise three assignments of error in support of their appeal, appellants fail to separately argue each assigned error. See App.R. 16(A)(7) and App.R. 12(A)(2). Instead, appellants raise four separate arguments in the argument section of their appellate brief. These separate arguments are related to the assigned errors but do not designate which assigned error they support. In sum, appellants assert that the trial court improperly elevated plaintiff's desire for pretrial discovery over both society's substantial interest in an adequate and safe blood supply and the privacy rights of the donor and his family.

Specifically, appellants first argue the trial court erred in ordering donor discovery because plaintiff has demonstrated no cognizable need for discovery of the donor's identity. Next, appellants argue the trial court erred in ordering donor discovery in light of the General Assembly's clear statutory mandate as found in R.C. 3701.243. Appellants also contend the trial court erred in ordering donor discovery because plaintiff's interest in the donor's identity does not outweigh the privacy rights of the donor and his family. Finally, appellants contend the trial court erred in ordering discovery because release of the donor's identity would imperil the safety and adequacy of the blood supply.

 In analyzing appellants' arguments, this court must first identify its role in reviewing a trial court's ruling on a discovery issue. It is well settled that a trial court possesses broad discretion over the parties' conduct during discovery. *Toney v. Berkemer* (1983), 6 Ohio St.3d 455, 6 OBR 496, 453 N.E.2d 700; *Loynd v. Scott Molders, Inc.* (1990), 62 Ohio App.3d 888, 577 N.E.2d 736; *Russo v. Goodyear Tire & Rubber Co.* (1987), 36 Ohio App.3d 175, 521 N.E.2d 1116; and *Fairfield Commons Condominium Assn. v. Stasa* (1985), 30 Ohio App.3d 11, 30 OBR 49, 506 N.E.2d 237. Thus, an appellate court will not reverse a trial court's order concerning the conduct of discovery absent an abuse of discretion. *Toney* and *Loynd, supra.* It has been said that an "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142; *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1248. However, where a trial court's order is based on a misconstruction of law, it is not appropriate for a reviewing court to use an abuse-of-discretion standard. *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808, 811–812. In determining pure questions of law, an appellate court may properly substitute its judgment for that of the trial court, since an important function of appellate courts is to resolve disputed propositions of law. *Id.*

 The Rules of Civil Procedure provide liberal discovery provisions. Pursuant to Civ.R. 26, the scope of discovery includes "any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Civ.R. 26(B)(1). Notwithstanding the liberal discovery provisions contained in the Civil Rules, a trial court is vested with the authority to limit pretrial discovery in order to prevent an abuse of the discovery process. *Doe v. Univ. of Cincinnati* (1988), 42 Ohio App.3d 227, 231, 538 N.E.2d 419, 423–424. Civ.R. 26(C) provides in part that "for good cause shown, the court

**576**

* * * may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense * * *." The decision to grant a motion for a protective order is left to the sound discretion of the trial court. *Stasa, supra,* 30 Ohio App.3d at 15, 30 OBR at 52–53, 506 N.E.2d at 242; *Doe, supra,* 42 Ohio App.3d at 231, 538 N.E.2d at 423–424.

In determining whether to grant a protective order, a trial court must balance the competing interests to be served by allowing discovery to proceed against the harm which may result. *Doe, supra.* Appellants essentially argue that the right to privacy of the donor and his family substantially outweighs the plaintiff's right for discovery because plaintiff has demonstrated no cognizable need for discovery of the donor's identity and because disclosure of the donor's identity would imperil the safety and adequacy of the blood supply.[3] After weighing such competing interests, the trial court herein ordered disclosure of the donor's name, last known address, Social Security number, and date of death, but further ordered that plaintiff and his counsel could not divulge the donor's identity or directly or indirectly contact the donor's family. The trial court also ruled that the order apply to experts retained by plaintiff and that any papers filed in court referring to the donor's name be made under seal.

The issue before this court is not one of first impression in the state of Ohio. In *Doe v. Univ. of Cincinnati, supra,* the Tenth District Court of Appeals held that the trial court abused its discretion in ordering disclosure of the name, address and telephone number of the person who donated blood allegedly infected with the HIV virus which was subsequently transfused into the plaintiff. The court of appeals recognized that the donor may have a constitutional right to privacy and that the donor was also protected by a right to privacy due to the reputational harm that could result from disclosure of his identity and the expectation of privacy which arose during the blood-donation screening process. The court also recognized that society's interest in maintaining an adequate and effective volunteer blood supply weighed in favor of protecting the donor's identity. Finally, the court recognized that the charitable act of donating blood was a factor weighing in favor of protecting the donor's identity. Against these factors, the court of appeals weighed the plaintiff's justification for seeking disclosure of the donor's identity. The court of appeals found the plaintiff's justification, that only the donor had actual knowledge of whether the defendants

---

3. The Red Cross, as custodian of a donor's health records, has standing to raise the donor's right to privacy. See *Deerfield Med. Ctr. v. Deerfield Beach* (C.A.5, 1981), 661 F.2d 328; *Carey v. Population Serv. Internatl.* (1977), 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675; *Craig v. Boren* (1976), 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397; *In re The June 1979 Allegheny Cty. Investigating Grand Jury* (1980), 490 Pa. 143, 147–149, 415 A.2d 73, 76 (medical records). Moreover, R.C. 3701.243(C)(3) allows the Red Cross to raise the donor's privacy rights.

followed the proper screening procedures when accepting the donor's blood, to be modest. The court added that no identifying information was legitimately needed to proceed with plaintiff's case. Therefore, the court of appeals reversed the trial court's order and remanded the cause for further proceedings.[4]

In the present case, appellants assert the donor's statutory right to privacy prohibits disclosure of his identity. R.C. 3701.243 generally prohibits a "person or agency of state or local government that acquires the information while providing any health care service or while in the employ of a health care facility or health care provider" from disclosing "the results of an HIV test in a form that identifies the individual tested" or "the identity of an individual diagnosed as having AIDS or an AIDS-related condition." R.C. 3701.243(A)(2) and (3). R.C. 3701.243 provides various exceptions to the non-disclosure rule. One such exception is found in subsection (C), which provides as follows:

"(C)(1) Any person or government agency may seek access to or authority to disclose the HIV test records of an individual in accordance with the following provisions:

"(a) The person or government agency shall bring an action in a court of common pleas requesting disclosure of or authority to disclose the results of an HIV test of a specific individual * * *.

"(b) The court may issue an order granting the plaintiff access to or authority to disclose the test results only if the court finds by clear and convincing evidence that the plaintiff has demonstrated a compelling need for disclosure of the information that cannot be accommodated by other means. In assessing compelling need, the court shall weigh the need for disclosure against the privacy right of the individual tested and against any disservice to the public interest that might result from the disclosure, such as discrimination against the individual or the deterrence of others from being tested.

---

4. On remand, the trial court issued a second discovery order which was the subject of a second appeal. *Doe v. Univ. of Cincinnati* (1991), 70 Ohio App.3d 354, 591 N.E.2d 9 (hereinafter referred to as *"Doe II "*). The trial court's second discovery order provided, in pertinent part:

"* * * Should the donor still be living, and should plaintiff want additional information on the donor, *plaintiff shall submit written questions to the donor. These questions shall initially be reviewed by the court and, if proper, the court shall attempt to have them answered under oath.* Defendant must agree to the admissibility of these answers, otherwise the court envisions no manner in which to avoid ordering the open disclosure of donor's identity. * * *" (Emphasis added.) *Id.* at 356–357, 591 N.E.2d at 10.

In *Doe II*, however, the court of appeals refused to determine whether the above protective order comported with its decision in *Doe I*. Instead, the case was dismissed as being untimely filed.

"(c) If the court issues an order, it shall guard against unauthorized disclosure by specifying the persons who may have access to the information, the purposes for which the information shall be used, and prohibitions against future disclosure.

"(2) A person or government agency that considers it necessary to disclose the results of an HIV test of a specific individual in an action in which it is a party may seek authority for the disclosure by filing an in camera motion with the court in which the action is being heard. In hearing the motion, the court shall employ procedures for confidentiality similar to those specified in division (C)(1) of this section. The court shall grant the motion only if it finds by clear and convincing evidence that a compelling need for the disclosure has been demonstrated.

"(3) *Except for an order issued in a criminal prosecution or an order under division (C)(1) or (2) of this section granting disclosure of the result of an HIV test of a specific individual, a court shall not compel a blood bank, hospital blood center, or blood collection facility to disclose the result of HIV tests performed on the blood of voluntary donors in a way that reveals the identity of any donor.*

"(4) In a civil action in which the plaintiff seeks to recover damages from an individual defendant based on an allegation that the plaintiff contracted the HIV virus as a result of actions of the defendant, the prohibitions against disclosure in this section do not bar discovery of the results of any HIV test given to the defendant or any diagnosis that the defendant suffers from AIDS or an AIDS-related condition."

 Pursuant to the above statute, a court is not permitted to order a blood bank, hospital blood center, or blood collection facility to disclose the identity of a donor unless, upon motion, the court finds by clear and convincing evidence that a compelling need for disclosure has been demonstrated. R.C. 3701.243(C). Moreover, in assessing compelling need, the court is required to weigh the need for disclosure against the privacy right of the individual tested and against any disservice to the public interest that might result from disclosure, such as discrimination against the individual or deterrence of others from being tested.

The factors to be weighed by the court in determining whether a compelling need exists for disclosure of the donor's identity are substantially similar to those weighed by the court in *Doe, supra.* Moreover, both appellants and appellee cite decisions favorable to their positions from other jurisdictions which weigh factors similar to those listed in Ohio's Non–Disclosure Act.

 In support of appellants' position, many courts recognize that a donor's privacy rights as well as society's interest in maintaining a safe and adequate volunteer blood supply substantially outweigh a plaintiff's interest in discovery of

a donor's identity. *See Doe, supra; Coleman v. Am. Red Cross* (E.D.Mich.1990), 130 F.R.D. 360; *Laburre v. E. Jefferson Gen. Hosp.* (La.1990), 555 So.2d 1381; *Krygier v. Airweld, Inc.* (1987), 137 Misc.2d 306, 520 N.Y.S.2d 475; *Stenger v. Lehigh Valley Hosp. Ctr.* (1989), 386 Pa.Super. 574, 563 A.2d 531; *Rasmussen v. S. Florida Blood Serv., Inc.* (Fla.1987), 500 So.2d 533; *Doe v. Am. Red Cross Blood Serv.* (D.S.C.1989), 125 F.R.D. 646; and *Roth v. New York Blood Ctr., Inc.* (1993), 157 Misc.2d 122, 596 N.Y.S.2d 639.

On the other hand, many cases support appellee's position that the interest of the plaintiff in obtaining limited donor discovery outweighs the blood donor's privacy interests. See *Watson v. Lowcountry Red Cross* (C.A.4, 1992), 974 F.2d 482; *Boutte v. Blood Sys., Inc.* (W.D.La.1989), 127 F.R.D. 122; *Sampson v. Am. Natl. Red Cross* (N.D.Tex.1991), 139 F.R.D. 95; *Snyder v. Mekhjian* (1990), 244 N.J.Super. 281, 582 A.2d 307; *Tarrant Cty. Hosp. Dist. v. Hughes* (Tex.App. 1989), 734 S.W.2d 675; *Gulf Coast Regional Blood Ctr. v. Houston* (Tex.App. 1988), 745 S.W.2d 557; and *Belle Bonfils Mem. Blood Ctr. v. Dist. Ct. of Denver* (Colo.1988), 763 P.2d 1003. Moreover, many of these cases further recognize that society's interest in maintaining a safe and adequate volunteer blood supply is not imperiled by allowing limited donor discovery. See *Belle Bonfils, Gulf Coast Regional Blood Ctr. v. Houston, Boutte,* and *Sampson, supra.*

After a complete and thorough review of all of the cases cited by the parties, this court concludes that, under the unique factual and legal circumstances of the case *sub judice,* and given the parties' relative positions concerning the manner in which pretrial discovery should proceed, the trial court abused its discretion in ordering disclosure of the donor's name, last known address, and Social Security number. As will be seen, a review of the trial court's protective order reveals that it should be more narrowly drawn to protect the donor's legitimate privacy rights. At this stage of the proceedings, and given the parties' relative positions, appellee has failed to demonstrate, by clear and convincing evidence, a compelling need for discovery of the donor's identity. Instead, this court finds that appellee has demonstrated a compelling need for the donor's medical records. While, at this stage of the proceedings, these records may be subject to the physician-patient privilege, a protective order may be fashioned which allows for discovery of the donor's medical records and, at the same time, protects against discovery of the donor's identity. See R.C. 2317.02(B)(1)(b). A review of the competing interests *sub judice* is, therefore, appropriate.

Appellants assert that the donor and his family have a substantial privacy interest at stake and that the trial court's order impermissibly infringes on this interest. This court agrees but finds, however, that the donor's right to privacy has been undermined somewhat due to his death. Nonetheless, appellants' argument that disclosure of the donor's identity violates his constitutional right to

privacy,[5] which protects against public disclosure of highly sensitive medical, social and personal information, is not entirely without merit.

Although the United States Constitution does not specifically mention an inherent right to privacy, the Supreme Court has recognized such right as a fundamental constitutional right. *Griswold v. Connecticut* (1965), 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510, 515–516. A constitutional right to privacy in the context of disclosure of personal information was first explicitly recognized in *Whalen v. Roe* (1977), 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64; *Doe, supra,* 42 Ohio App.3d at 231, 538 N.E.2d at 423–424. The Ohio Supreme Court has also found a state constitutional right to privacy absent an explicit textual foundation. See *e.g., Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340; *Doe, supra,* 42 Ohio App.3d at 231, 538 N.E.2d at 423–424. Moreover, several courts have recognized that the constitutional right to privacy, which protects sensitive medical records and the identity of patients, is a factor to be considered in balancing the interests supporting liberal discovery against the potential resulting harm. See *Rasmussen v. S. Florida Blood Serv., Inc., supra; John Doe v. Am. Natl. Red Cross* (Aug. 8, 1988), Tenn. (Davidson) App. No. 88C–169, unreported; *Doe v. Borough of Barrington* (D.N.J.1990), 729 F.Supp. 376, 382. Other courts have explicitly declined to extend a donor's constitutional right to privacy to protect sensitive medical records or a patient's identity, see *Roche v. Am. Red Cross* (1989), Mass.S.Ct. No. 87–3923, unreported; *Tarrant Cty. Hosp., supra;* and *Gulf Coast Regional Blood Ctr., supra.* Still other courts merely acknowledge that the donor may have a constitutional right to privacy. See *Doe v. Univ. of Cincinnati, supra,* 42 Ohio App.3d at 231, 538 N.E.2d at 423–424 ("In addition to any constitutional right the donor *may* have * * *.").

 In the present case, this court acknowledges that the donor has a constitutional right to privacy which protects against public disclosure of the results of an HIV test or diagnosis of AIDS or an AIDS-related condition. We also believe that the trial court's protective order adequately safeguards against *public* disclosure of such information. *Tarrant Cty. Hosp. v. Hughes, supra; Gulf Coast Regional Blood Ctr. v. Houston, supra.* Additionally, although we believe the donor maintains a privacy interest in his medical records, we believe the donor's death has the effect of rendering his right to privacy in such information less compelling. See, *e.g., Doe II, supra.*

 Appellants next assert that the donor has a right to privacy which protects against disclosure of his identity based on the reputational harm that

---

5. A court order which compels or restricts pretrial discovery constitutes state action that is subject to constitutional limitations. *Seattle Times Co. v. Rhinehart* (1984), 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17.

could result from disclosure. However, the donor's privacy interests, in this regard, are also undermined first by the donor's death and second by the protection afforded against public disclosure by the trial court's order. In the first instance, the donor can no longer suffer from the reputational harm or discrimination which may result from disclosure of his identity. State law recognizes this principle by its refusal to extend a survivorship action to libel, slander and invasion of privacy torts. *Stein–Sapir v. Birdsell* (C.A.6, 1982), 673 F.2d 165 (libel and slander); *Young v. That Was The Week That Was* (C.A.6, 1970), 423 F.2d 265 (invasion of privacy); *Oakwood v. Makar* (1983), 11 Ohio App.3d 46, 11 OBR 79, 463 N.E.2d 61 (slander). Additionally, R.C. 3701.244, which creates a civil cause of action against a person or government agency that knowingly violates R.C. 3701.243(A), specifically states that such cause of action does not survive the death of an individual injured. R.C. 3701.244(E). Second, the trial court's order adequately protects against public disclosure of the confidential information. In this regard, the following rationale from the Texas Court of Appeals in *Gulf Coast* is persuasive:

"There is no doubt that AIDS in our society carries a hideous stigma which has resulted in hostility towards AIDS victims. However, the court's restriction placed upon the discovery order acts to closely monitor the discovery process and strongly prohibits any disclosure of the 'donor[s'] names or locations, either directly or indirectly, to third parties * * *.' As a result, there will be no *public* identification of a donor as an AIDS carrier, which would require the procedural due process standards of notice and an opportunity to be heard." *Id.*, 745 S.W.2d at 561.

Finally, appellants argue that society's interest in a safe and adequate blood supply is imperiled by disclosure of the donor's identity. See *Coleman v. Am. Red Cross, supra; Doe v. Univ. of Cincinnati, supra; Rasmussen v. S. Florida Blood Serv., supra;* and *Doe v. Am. Red Cross Blood Serv., supra.* On the other hand, appellee argues that the trial court's limited discovery order would not imperil the safe and adequate supply of the volunteer blood supply and that society's interests in a safe and adequate blood supply are not necessarily incompatible with discovery of the donor's identity. See *Boutte v. Blood Sys., Inc., supra;* and *Belle Bonfils, supra.*

We agree with the court's decisions in *Boutte* and *Belle Bonfils, supra.* We believe that the trial court's limited discovery order takes into account any adverse impact which may result to threaten the safety and adequacy of the volunteer blood supply. As previously mentioned, the court's order prohibits plaintiff, his counsel and agents from disclosing the donor's identity or contacting the donor's family. Moreover, reference to the donor's identity in any court

document is to be made under seal. Finally, this court believes the following passage from the federal district court's decision in *Boutte* is persuasive:

"As with the donor's privacy interest in remaining anonymous, however, society's interest in maintaining the availability of an abundant supply of volunteer blood for distribution to hospitals must be weighed against Boutte's rights to the disclosure of information critical to his claim. Furthermore, the plaintiffs' interest is not entirely incompatible with society's interest in a blood supply which is safe as well as plentiful. In cases such as the one *sub judice*, the infected donor is one of only two people who knows whether the screening procedures were followed. This information will serve not only to promote a just outcome in this case, but also will ensure that blood suppliers establish and implement only the highest standards in collecting and selling blood. *Belle Bonfils Memorial Blood Center, supra*, at 1012. Discovery of relevant information from the subject donor is therefore appropriate, although a protective order will be entered to preserve the confidentiality of the donor's identity."

■ Finally, appellants argue that appellee has failed to demonstrate, by clear and convincing evidence, a compelling need for discovery of the donor's identity. Appellee argues the donor's identity is necessary to support his assertion of negligence by the Red Cross in screening the donor. Appellee states that all that is needed and requested is the donor's identity so that his medical records may be obtained. With these medical records, appellee asserts that he will be able to establish whether the donor was symptomatic for AIDS or "early AIDS" at the time of donating to the Red Cross. This court believes that appellee's asserted need is for discovery of the donor's medical records and not necessarily the donor's identity. The date on which appellee received the blood transfusion (January 1985) and the date of the donor's death (sometime in 1986) support appellee's argument that the donor's medical records may reveal that the donor was symptomatic for the HIV virus, AIDS or "early AIDS." If it turns out that the donor's medical records indicate that the donor was, in fact, symptomatic for the HIV virus, AIDS or "early AIDS" at the time of donating, then appellee would have evidence supporting his contention that the screening procedures of the Red Cross were deficient. Thus, appellee's request for discovery of the donor's identity appears reasonably calculated to lead to the discovery of relevant and admissible evidence.

However, the trial court's protective order is problematic for two reasons. First, at this stage of the proceedings, it is overly broad in that it unnecessarily compels disclosure of the donor's identity. Second, it is self-defeating, since it prohibits appellee from directly or indirectly contacting the donor's family when that may be necessary in order to obtain the donor's medical records. We believe a less intrusive avenue of pursuing discovery may exist at this stage of the

proceedings. In this regard, a protective order may be drafted in such a fashion as to allow appellee to obtain the relevant medical records without obtaining the donor's identity.

Appellants, however, argue that appellee's need for discovery of the donor's identity is obviated by the donor's death and the fact that the Red Cross has provided substantial documentary evidence relative to donor screening. Appellants state that they have already produced the donor's "health history card," the Red Cross's policies and procedures relative to donor screening, and the informational pamphlet given to the implicated donor, which described the symptoms of AIDS and urged individuals in such groups to refrain from donating. Appellants' arguments are unpersuasive.

The Colorado Supreme Court, in *Belle Bonfils, supra,* rejected a similar argument as the one being made by appellants herein. The court held as follows:

"In balancing the competing interests here, the donor has a privacy interest in remaining anonymous and avoiding the embarrassment and potential humiliation of being identified as an AIDS carrier. Belle Bonfils, and society as a whole, have an interest in maintaining the availability of an abundant supply of volunteer blood for distribution to numerous hospitals. These interests must be weighed against K.W.'s and C.W.'s right to the disclosure of all information necessary to pursue their claims. However, society as a whole also has an interest consistent with that of K.W. and C.W.; namely, that of maintaining a safe blood supply. Bonfils cannot claim absolute immunity from discovery when it is in the business of providing a product capable of transmitting disease.

"The claims against Bonfils will turn primarily on whether K.W. and C.W. can establish that Bonfils failed to adequately screen and test the blood that infected K.W. in March of 1985. In our view, the masked donor cards made available to K.W. and C.W. do not provide them with sufficient information relating to the screening and testing procedures that will permit them to prosecute their claims. Therefore, in order to prosecute their claims, it is necessary for K.W. and C.W. to have controlled access to the donor to discover whether, from the donor's perspective, the screening procedures were followed.

"Since there is a genuine negligence issue, respondents should not be denied the opportunity of pursuing discovery directed at events that transpired when the infected blood was donated. While we recognize that the donor has an interest in maintaining his privacy, we conclude that, in light of the foregoing discussion, the interests of K.W. and C.W. outweigh that of the donor." *Id.,* 763 P.2d at 1012–1013.

We believe that while the evidence relating to the screening process of the Red Cross already supplied to plaintiff is relevant to plaintiff's case for

negligent screening, so, too, are the donor's medical records. Therefore, this court concludes that the plaintiff has demonstrated a compelling need for discovery of the donor's medical records. Further, while it might be possible to obtain such records upon disclosure of the donor's identity, a less intrusive avenue may exist for appellee to obtain these records without disclosure of the donor's identity.

Based on the foregoing, this court concludes that the trial court abused its discretion in ordering the Red Cross to supply the plaintiff with the donor's name, last known address, and Social Security number. In balancing the competing interests, this court holds that appellee has not yet demonstrated a compelling need for disclosure of such information in order to pursue relevant information in prosecution of his negligence action. In so holding, this court recognizes that the donor has a constitutional and statutory right to privacy which protects against public disclosure of the results of an HIV test or diagnosis of AIDS or an AIDS-related condition. However, we believe the donor's privacy rights are somewhat less compelling and entitled to less weight due to his death. The donor can no longer suffer any reputational harm or discrimination which may result from disclosure of his identity. Against these privacy interests, we note that appellee has not yet demonstrated a compelling need for disclosure of the donor's identity. Rather, appellee's asserted need is for discovery of the donor's medical records. Moreover, while the trial court's protective order adequately safeguards against public disclosure of the donor's identity and takes into account any adverse impact which may result to threaten the safety and adequacy of the volunteer blood supply, it is unnecessarily overbroad and allows for disclosure of the donor's identity when a less intrusive avenue of pursuing discovery may exist.

We emphasize, however, that our decision is strongly influenced by the parties' relative positions concerning pretrial discovery and by appellee's asserted need for the donor's medical records, which we believe may be obtained without disclosing the donor's identity. The crux of appellee's position is that the donor's medical records are needed to strengthen his assertion that the Red Cross was negligent in its screening process. Appellee contends that if the donor's medical records indicate that the donor was symptomatic for the HIV virus, AIDS or "early AIDS," then appellee would have compelling evidence supporting his contention that the Red Cross's screening procedures were deficient. Additionally, appellants have agreed, both before the trial court and this court, to enter into various stipulations and even attempt to obtain the donor's medical records, albeit with the donor's identity redacted. While it appears that a release from the donor's spouse, executor or administrator would be required to obtain the donor's medical records, see R.C. 2317.02(B)(1)(b), the trial court's protective order

currently prohibits appellee or his counsel from directly or indirectly contacting the donor's family. On the other hand, a protective order requiring appellants' counsel to contact the donor's spouse, executor or administrator without undue annoyance, embarrassment or oppression in order to seek a release to obtain the donor's medical records, without disclosing his identity, would render appellee's need for the donor's identity moot.

On remand, the trial court, in fashioning an appropriate protective order, must be mindful that the donor's remaining privacy rights are to be weighed against appellee's need for disclosure of the donor's identity. At this stage of the proceedings, this court believes appellee's need for disclosure of the donor's identity is not compelling in light of the existence of a less intrusive avenue of pursuing discovery. The trial court should, therefore, use its discretion in fashioning a protective order, keeping in mind the specific needs of appellee in obtaining discovery of relevant information supporting his claim while, at the same time, protecting the legitimate interests of the donor and his family. In fashioning an appropriate protective order, the trial court should, therefore, use as its starting point the stipulations which appellants have previously agreed to enter. Under the unique factual circumstances of the case *sub judice,* and given the parties' positions concerning pretrial discovery, we believe the least intrusive means of pursuing discovery would be to require appellants' counsel to contact the donor's spouse, executor or administrator without undue annoyance, embarrassment or oppression in order to seek a release to obtain the donor's medical records, without disclosing his identity, in exchange for an agreement from appellee not to seek further discovery of the donor's identity. Should these efforts fail in obtaining the donor's medical records, the trial court, in its discretion, may modify its original order, making sure the donor is protected against public disclosure of his identity while, at the same time, providing appellee with an avenue to obtain relevant information in support of his claim in a fashion consistent with this court's opinion and consistent with R.C. 3701.-243(C)(1) through (4). See, also, Civ.R. 15(D).

Accordingly, appellants' three assignments of error have merit. The judgment of the Cuyahoga County Court of Common Pleas is reversed and the cause is remanded for further proceedings consistent with this court's opinion.

*Judgment reversed*
*and cause remanded.*

KRUPANSKY, J., concurs.

JOHN F. CORRIGAN, P.J., concurred in judgment, but did not have the opportunity to review this Journal Entry and Opinion prior to his death on February 8, 1994.