JOURNAL ENTRY AND OPINION
Defendants-appellants Frank Nunnari, et al. appeals from the judgments of the trial court following a jury trial in favor of plaintiffs-appellees Mark Anderson, et al. arising out of an automobile accident and injuries to the plaintiffs. Defendants contend the trial court abused its discretion in excluding their expert medical testimony from trial as a sanction for not complying with the discovery rules. We find no error and affirm.
This case arose out of an automobile accident on March 29, 1997, in which a car operated by defendant Nunnari ran into the rear of a car in which plaintiffs Mark Anderson, Matthew Bettlee and Craig Jalovic were passengers. Plaintiffs filed suit on October 16, 1998. Defendants answered and discovery ensued. The issue on this appeal is whether the trial court abused its discretion in excluding from trial the videotape testimony of defense expert, Karl Metz, M.D., for defendants' failure to follow the discovery rules. The troubling history of the discovery disputes is set forth below.
On April 16, 1999, the trial court ordered that plaintiffs submit to an independent medical examination by Dr. Karl Metz. The plaintiffs were examined by Dr. Metz. Dr. Metz's narrative medical reports were provided to plaintiffs' counsel by separate cover on May 19, 1999 and May 26, 1999.
The trial court conducted a status conference on April 28, 1999. At the conclusion of that conference, the court entered an order indicating that plaintiffs had completed expert discovery and ordered defendants to complete discovery before May 28, 1999. The court set the matter for trial on October 12, 1999 with a final pre-trial on September 29, 1999.
In preparation for trial, defense counsel scheduled the videotape trial deposition of Dr. Metz for September 27, 1999, commencing at 1:30 p.m. Plaintiffs' counsel received the notice of the videotape trial deposition on September 20, 1999. On September 20, 1999, plaintiffs' counsel made her first request for the discovery deposition of Dr. Metz.
Defense counsel advised plaintiffs' counsel that Dr. Metz was available for discovery deposition on Saturday, September 25, 1999, commencing at 9:00 a.m. at Dr. Metz's office in Chagrin Falls, Ohio.
On September 24, 1999, Dr. Metz's office sent a facsimile to plaintiffs' counsel containing an agreement requesting plaintiffs' counsel to agree to certain conditions regarding Dr. Metz's compensation.These conditions consisted of: (1) a $500 retainer fee; (2) $400/hour examination fee; (3) $195/hour for reviewing the records; (4) $195/hour for reviewing x-rays; (5) $100/page for the physician's report; (6) $400/hour deposition fee; (7) $150/half day for court testimony; (8) $100/hour for travel time; (9) $195/hour for conferencing with counsel; (10) $50 to copy each medical chart; and (11) various cancellation fees. These appear to be Dr. Metz's standard rates for such services, not necessarily what he was demanding for the plaintiffs' deposition.
In any event, plaintiffs' counsel refused to sign the agreement forwarded by Dr. Metz, objecting to the financial conditions attached. With no agreed compensation for time spent in deposition, Dr. Metz notified plaintiffs' counsel that he would unilaterally cancel the discovery deposition if the signed agreement was not received by 5:00 p.m. on September 24, 1999. Plaintiffs' counsel found the hourly deposition fee to be excessive and unreasonable. Despite that opinion, plaintiffs' counsel sent Dr. Metz a letter, viafascimile, agreeing to pay him the $400/hour deposition fee. Plaintiffs' counsel, however, refused to sign the form agreement that Dr. Metz had sent. Dr. Metz, therefore, canceled the deposition around 5:00 p.m. on September 24, 1999.
The videotape trial deposition of Dr. Metz was scheduled for 1:30 p.m. on September 27, 1999. Plaintiffs filed their motion to exclude testimony of Dr. Karl Metz, or alternatively, for a protective order at 12:53 p.m. on September 27, 1999. The deposition went forward as noticed but plaintiffs' counsel did not attend. On September 28, 1999, defense counsel filed a brief in opposition to plaintiffs' motion to exclude the testimony of Dr. Metz. A final pre-trial was conducted by the trial court on September 29, 1999. In an effort to avoid excluding the doctor's testimony, the court inquired if Dr. Metz could be made available for discovery deposition anytime prior to trial. The court was informed that Dr. Metz would not be available.
On September 30, 1999, the trial court granted plaintiffs' motion with the following language:
 Motion to exclude testimony of defendant expert Karl Metz is granted, as defendant has failed to comply with the civil rules.
On October 6, 1999, defendants filed a motion for reconsideration which was rejected by the trial court. Defense counsel made a proffer of Dr. Metz's testimony at the conclusion of his evidence. Such testimony would have cast doubt on whether or not the rear end collision was the proximate cause of plaintiffs' continuing physical problems. This information was known to plaintiffs' counsel as early as May 1999 when it received copies of the doctor's reports.
On July 21, 1999, the trial court journalized the verdict of the jury in favor of plaintiff Anderson in the amount of $2,062.08; plaintiff Bettlee in the amount of $12,163.87; and plaintiff Jalovec in the amount of $26,438.25. The final entry was journalized by the court on October 21, 1999 and this timely appeal ensued.
The defendants' sole assignment of error states as follows:
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT FRANK NUNNARI BY ABUSING ITS DISCRETION IN BARRING THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS, DR. KARL METZ, AS A DISCOVERY SANCTION. (VOL. 2384, P. 904; PROFFER OF TESTIMONY OF DR. KARL METZ; TR. AT P. 544; 16-25, P. 546; 1-2.)
In Arnold v. Am. Natl. Red Cross (1994), 93 Ohio App.3d 564, this Court voiced the well-established principle that a trial court has broad discretion in addressing the parties' conduct during discovery:
 In analyzing appellants' arguments, this court must first identify its role in reviewing a trial court's ruling on a discovery issue. It is well settled that a trial court possesses broad discretion over the parties' conduct during discovery. [Citations omitted]. Thus, an appellate court will not reverse a trial court's order concerning the conduct of discovery absent an abuse of discretion.
Id. at 575. Similarly, the Supreme Court of Ohio has stated that the trial court enjoys great latitude in applying sanctions and that the role of a reviewing court is merely to review these rulings for an abuse of discretion. Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254,256. Id. at 61. The courts have consistently held that this standard can not be met by demonstrating a mere error of judgment. Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 498,506. The Court in Nakoff, supra, at 256 held that:
 A reviewing court's responsibility is merely to review these rulings for an abuse of discretion. The term discretion itself involves the idea of choice, of an exercise of the will, of determination made between competing considerations. State v. Jenkins (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 361, 473 N.E.2d 264, 313, quoting Spalding v. Spalding (1959), 355 Mich. 382, 384-385, 94 N.W.2d 810, 811-812. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Id.
At the outset of this litigation, plaintiffs served an interrogatory upon defendants asking them to identify the persons they intended to call as expert witnesses at trial. Defendants objected to the interrogatory, stating that they did not have to decide their trial strategy at that time. (Interrogatory Answer 22).
Civ.R. 26(E) states in relevant part as follows:
 A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
 (1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to * * * (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify.
The objective of this Rule is to provide opposing counsel with the opportunity to conduct expert discovery and to prevent trial by ambush. Walker v. Holland (1997), 117 Ohio App.3d 775, 785. Supplemental responses indicating an intention to call an expert to testify are necessary to allow for discovery of that expert in preparation for cross-examination at trial. Civ.R. 26(B)(4)(a) prohibits discovery of facts known and opinions held by an expert retained or specifically employed by another party * * * in preparation for trial unless the discovering party can demonstrate an inability to obtain opinions on the same subject by other means without undue hardship. The Rule specifically provides that discovery of an expert can be conducted if the opposing party intends to call him to the stand. It reads in part as follows:
 * * * a party by means of interrogatories may require any other party (i) to identify each person whom the other party expects to call as an expert witness at trial, and (ii) to state the subject matter on which the expert is expected to testify. Thereafter any party may discover from the expert or the other party facts known or opinions held by the expert which are relevant to the stated subject matter * * *.
Defendants had plaintiffs examined by their retained physician, Dr. Karl Metz, back in May 1999. Defendants produced reports of the doctor's findings to plaintiffs. The tenor of these reports suggested that Dr. Metz would be a favorable witness for the defense. Nevertheless, through oversight or otherwise, defendants did not notify plaintiffs that Dr. Metz would testify by filing supplemental answers to interrogatories or updating defendants' position. On Friday, September 17, 1999, defense counsel sent a letter to plaintiffs' counsel advising for the first time that defendants intended to call Dr. Metz to testify at trial, stating that the trial testimony of Dr. Metz would be taken in approximately one week.
Immediately after defendants indicated an intention to call Dr. Metz to the stand, plaintiffs' counsel requested a date for Dr. Metz's discovery deposition. After initially stating that Dr. Metz was not available at any time, defense counsel agreed to make Dr. Metz available for discovery deposition on Saturday, September 25th at 9:00 a.m., at his office in Chagrin Falls. Plaintiffs' counsel then confirmed the deposition by correspondence and issued a notice of deposition.
The day before the discovery deposition, Dr. Metz demanded that plaintiffs' counsel execute an agreement no later than 5:00 p.m. that day providing that plaintiffs' counsel would be solely responsible for Dr. Metz's fees in regard to the discovery deposition including a retainer and amounts for review of records, review of x-rays, and time spent in conference with opposing counsel in preparation.[1] Plaintiffs' counsel attempted to cooperatively resolve the dispute by faxing a letter to Dr. Metz agreeing to pay him the $400/hour deposition fee. In response, Dr. Metz indicated that there would be no effort to resolve the matter, except by acceptance of Dr. Metz's terms. Plaintiffs' counsel again faxed a letter to the doctor agreeing to pay the $400/hour deposition fee. Counsel also warned Dr. Metz that if he refused to proceed, counsel would seek a court order compelling Dr. Metz to appear. Even then, Dr. Metz unilaterally canceled the discovery deposition.
Civ.R. 37(D) allows the trial court to exercise its discretion in issuing sanctions when a party fails to seasonably supplement responses to an interrogatory addressing testimony by an expert witness at trial. Pursuant to the terms of the Rule, the sanctions may be issued without a prior order compelling appropriate responses. Jones v. Murphy (1984),12 Ohio St.3d 84, 85. Civ.R. 37(D) reads:
 If a party * * * fails * * * (2) to serve answers or objections to interrogatories * * * the court in which the action is pending on motion and notice may make such orders in regard to the failure as are just, and among others it may take any action authorized under subsections (a), (b), and (c) of subdivision (B)(2) of this rule.
Civ.R. 37(B)(2)(b) provides that a court may sanction a party by entering (a)n order * * * prohibiting him from introducing designated matters in evidence.
The trial court, at the final pre-trial conference on September 29, 1999, and upon plaintiffs' motion, ordered the discovery deposition of the defense expert prior to trial. Defendants claimed that Dr. Metz could not be available any time before trial. Defendants' refusal deprived plaintiffs' counsel of the opportunity to adequately prepare for cross-examination at trial.
A striking analogy can be drawn between the facts of this case and those reviewed by the Ohio Supreme Court in Jones v. Murphy (1984),12 Ohio St.3d 84. In Jones, the trial court excluded expert testimony by all three of the plaintiffs' treating physicians. The reason cited by the trial court was that the plaintiffs failed to supplement their responses to an interrogatory asking them to identify each person expected to be called as an expert witness at trial. The interrogatory and response follow:
 On April 27, 1982, appellee served interrogatories on appellants, one of which reads as follows:
 Please state the name and address of each person expected by you, your attorney or other representative of yours, to testify as an expert witness during the trial or hearing of this matter.
On May 27, 1982, plaintiffs answered: Undetermined at present. Id. at 84. Notably, the plaintiffs had identified the three physicians as witnesses in response to other interrogatories long before trial. They had supplied reports from two of them and made the third available for discovery deposition prior to trial. They had simply not identified them as expert witnesses. These facts were referenced in a dissenting opinion as follows:
 These three experts were Mrs. Jones' treating physicians. Two of the three had been named as witnesses by answers to interrogatories in January 1980, and the third, by supplemental answers in May 1982. * * * deposition [was] taken of Dr. Porter on January 27, 1983, and with medical reports from the other doctors before the date of trial on February 1, 1983 * * *
Even so, the plaintiffs had failed to follow the mandate of Civ.R. 26 by supplementing their responses to the interrogatory asking them to state whether they expected to call them to testify at trial. Although the parties were aware of all three physicians and their involvement with the case, plaintiffs waited until two weeks before trial to say that they would call them to the stand. The trial court excluded expert testimony by all three of the physicians on the basis that Civ.R. 26 imposed a duty to formally express a party's intention to call the expert to the stand.
 On January 20, 1983, twelve days prior to trial, counsel for appellee learned by telephone that appellants intended to call as an expert witness at trial one of appellants' treating physicians, Dr. L. Joe Porter. On the next day, appellee filed a motion in limineto exclude the testimony of all experts called by appellants at trial, on the grounds that Civ.R. 26(E)(1)(b) had been violated. On January 31, 1983, the trial court sustained the motion.
Id. at 84.
While experts are often retained, they are not always called to the stand at trial. Civ.R. 26 operates to take the guesswork out of trial preparation and to allow discovery of an expert that will take the stand. The Court highlighted the purpose of the Rule as follows:
 One of the purposes of the Rules of Civil Procedure is to eliminate surprise. This is accomplished by way of the discovery procedure which mandates a free flow of accessible information between the parties upon request, and which imposes sanctions for failure to timely respond to reasonable inquiries * * *.
 We therefore conclude that Civil Rule 37 permits the exclusion of expert testimony pursuant to a Motion in Limine as a sanction for the violation of Civil Rule 26(E)(1)(b).
We are disappointed by what appears to be the brinkmanship of counsel in this case. We are also troubled by the doctor's role in canceling his own deposition. It may very well be that the course of events was merely inadvertent or coincidental. We hope so. Justice would indeed suffer if unwarranted judgments were entered because parties were not allowed to fully defend themselves or present their best case. We do not wish to encourage extreme sanctions which deprive a party of his right to defend himself or prosecute his claim. At all times the trial court should be circumspect and deliberate in imposing any sanctions which may tend to tilt the outcome of the case. The discovery impasse herein could have been avoided simply by continuing the trial to allow time to straighten out the discovery dispute and allow the deposition to go forward.
Nevertheless, the judgment in these matters is committed in the first instance to the sound discretion of the trial court. Whether or not we would personally have imposed the stringent sanction employed is not the question. On this record, we cannot find that the trial court acted unreasonably, arbitrarily or unconscionably.
Defendants' sole assignment of error is overruled.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., CONCURS., O'DONNELL, P.J., CONCURS IN JUDGMENT ONLY.
 ______________________________ JAMES M. PORTER, JUDGE
[1] Specifically, the conditions set forth in the agreement were: (1) a $500 retainer fee; (2) $400/hour examination fee; (3) $195/hour for reviewing the records; (4) $195/hour for reviewing x-rays; (5) $100/page for the physician's report; (6) $400/hour deposition fee; (7) $150/half day for court testimony; (8) $100/hour for travel time; (9) $195/hour for conferencing with counsel; (10) $50 to copy each medical chart; and (11) various cancellation fees.