STANTON, Admr., Appellant,

v.

UNIVERSITY HOSPITALS HEALTH SYSTEM, INC., d.b.a. Bedford Medical Center, EMES Health Care, Inc., d.b.a. Heritage Care Nursing, and Rehabilitation Center, AHAVA Health Care, L.L.C., f.k.a. JMA Healthcare, L.L.C., et al., Appellees.

[Cite as *Stanton v. Univ. Hosps. Health Sys., Inc.,*
166 Ohio App.3d 758, 2006-Ohio-2297.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86516.

Decided May 11, 2006.

Frederick M. Gittes and Kathleen B. Schulte, for appellant.

Blackburn Law Group, Inc., and Catherine E. Blackburn, for appellees.

Norchi & Associates L.L.C. and Steven J. Forbes, for appellee University Hospital.

Buckingham, Doolittle & Burroughs, Paul A. Dzenitis, Dirk E. Riemenschneider, and Timothy A. Spirko, for appellee AHAVA Health Care, L.L.C., et al.

MARY EILEEN KILBANE, Judge.

{¶ 1} William R. Stanton, administrator of the estate of Margaret F. Stanton, appeals from an order of the trial court that denied its motion for a protective order and ordered the estate to produce its nurse paralegal for deposition on the sole issue of how the expert reports were generated. We affirm.

{¶ 2} On February 24, 2002, 98–year–old Margaret Stanton was admitted to University Hospitals System Bedford Medical Center ("UHHS Bedford") with symptoms of hemorrhagic cystitis. While at UHHS Bedford, Ms. Stanton fell and fractured her hip and was moved to Heritage Care Nursing and Rehabilitation Center. At Heritage, Ms. Stanton fell to the floor for a second time and was returned to UHHS Bedford. Upon arriving at UHHS Bedford, she was diagnosed with dehydration and acute renal failure. Ms. Stanton stayed at the UHHS Bedford facility through the end of March 2002, at which time her family withdrew intravenous feeding and support, and Ms. Stanton passed away.

{¶ 3} On February 17, 2004, William R. Stanton, in his capacity as administrator of the estate, filed a survivorship and wrongful-death action against Heritage, AHAVA Health Care, L.L.C. ("Ahava"), and UHHS Bedford. The complaint sought damages for wrongful death against UHHS Bedford and alleged violations of the Nursing Home Resident's Rights and negligence against both Ahava and Heritage. The complaint additionally demanded damages for malice and disregard for the safety and well-being of Ms. Stanton.

{¶ 4} In January 2005, UHHS Bedford deposed the estate's experts, Cheryl Vajdik, R.N., and Dr. Stephen Aiello. During their respective depositions, the estate discovered that opposing counsel's nurse paralegal, Barbara Roberts, had assisted both experts in preparing their reports. UHHS Bedford and Ahava cite several portions of the experts' depositions that they claim mandated Ms. Roberts's deposition. The following excerpts follow the questioning of Dr. Aiello regarding the creation of his expert report:

A: Did I write it? I actually worked with Barbara Roberts in Ms. Blackburn's office to put that into a form that you could use. They are my ideas put into a form that works for the legal system.

Q: And some of the words were chosen for you and they better expressed what you were thinking, the lawyer's office chose those words?

A: There were some that were, yes. And I would hope vice versa, and maybe I chose some things that were a little better expressed. But there were many things that were better expressed by someone who knows how to do this.

Q: There was no letter indicating, here is a copy of the draft of my expert report, or here—the way I understood this went, is you looked at the stuff, gave some building blocks for an opinion to lawyers.

A: Uh-huh.

Q: The lawyers wrote the report, sent it back to you, right?

A: Yes.

Q: And then you edited it?

A: A draft.

Q: Right. And then you edited it?

A: Right.

\* \* \*

Q: So the way this collaboration worked is you spoke with—what's her name? Roberts?

A: Barbara Roberts.

Q: You spoke with Ms. Roberts?

A: Yes.

Q: And Ms. Roberts wrote the report, faxed you back a draft?

A: Yes. Faxed me back a draft and edited the draft. I believe I faxed it back to her, and then she sent me the final copy, which was then—I signed.

{¶ 5} At her deposition, and in response to questions regarding the submission of her own expert report, Vajdik testified:

Q: Did you write that?

A: I called and had a phone conference call and gave them all my opinions over the phone, and they typed it. But this is what I've said.

\* \* \*

Q: Did you supply anything in writing to them before they sent you back this report?

A: No. I gave them all my opinions over the telephone in great detail.

Q: So this is worded or written by the lawyer's office?

\* \* \*

A: It's typed by the lawyer's office. It's written—these are my words. They typed it. These are my opinions.

Q: Did they transcribe what you told them, do you know?

A: Transcribed? You mean—

Q: Did they write this from memory following the conversation? Is that your understanding of what happened?

\* \* \*

A: I imagine my understanding is they wrote down what I said.

Q: Did you dictate it or have a conversation?

A: I had a conversation with all my opinions.

Q: And after that conversation where you gave them your opinions, they wrote the report?

* * *

A: They typed the report based on the opinions I gave them.

Q: When I think of type, I think of handing someone either a tape or something written out and that person looks and types up exactly what I'm saying or have written. That is not what occurred here, correct?

A: I wasn't on the other side, so I'm not sure how she took down the information that I gave her.

Q: Is this word for word what you said in that conversation?

A: It appears to be what I said. I mean I—word for word—I mean these are my opinions. This is what I've said. These are the words that I've used.

Q: Were there any drafts?

A: I believe there was a draft, yes.

Q: Do you have a copy of the draft in your file?

A: No. I don't keep them.

{¶ 6} Based on this testimony, on February 25, 2005, UHHS Bedford and Ahava requested the deposition of Barbara Roberts, a nurse paralegal for attorney Catherine Blackburn, one of the attorneys representing the estate. The parties claimed to have requested the deposition because of the belief that Roberts had written the reports for both of the estate's experts.

{¶ 7} The estate refused to allow Roberts to be deposed and moved for a protective order. UHHS Bedford and Ahava opposed the motion, and in May 2005, the trial court denied the motion, ruling, "Defendant may depose Plaintiff's nurse paralegal only on the issue of how Plaintiff's expert reports were generated." The estate appealed from this order in a single assignment of error which states:

The trial court abused its discretion when it ruled that counsel for defendants may depose the in–house nurse paralegal for plaintiff's counsel about conversations with expert witnesses.

{¶ 8} Civ.R. 26(C) allows the trial court to grant protective orders regarding discovery in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *Fifth Third Bank v. Jones–Williams*, Franklin App. No. 04AP–935, 2005-Ohio-4070, 2005 WL 1870772. The decision to grant or deny a protective order is within the trial court's discretion. *Hahn v. Satullo*, 156 Ohio App.3d 412, 2004-Ohio-1057, 806 N.E.2d 567, citing *Van–American Ins. Co. v. Schiappa* (1999), 132 Ohio App.3d 325, 330,

724 N.E.2d 1232. Absent an abuse of discretion, an appellate court may not overturn the trial court's ruling on discovery matters. *Feichtner v. Cleveland* (1994), 95 Ohio App.3d 388, 397, 642 N.E.2d 657, citing *Vinci v. Ceraolo* (1992), 79 Ohio App.3d 640, 607 N.E.2d 1079.

{¶ 9} In its sole assignment of error, the estate contends that deposing a paralegal concerning conversations with witnesses implicates the work-product of its counsel. Although the estate concedes that it found no case law that directly addresses whether conversations between an attorney's paralegal and witnesses constitutes the work product of the attorney, it asserts that since a paralegal works at the discretion and direction of the attorney, there is no distinction between the work product of the two. See *Community Mut. Ins. Co. v. Tracy,* 73 Ohio St.3d 371, 1995-Ohio-296, 653 N.E.2d 220.

{¶ 10} The estate also cites *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, in which the Supreme Court first enumerated the attorney work-product doctrine. This doctrine is now codified in Federal Rules of Civil Procedure 26(b)(3), which provides:

[A] party may obtain discovery of documents and tangible things otherwise discoverable * * * and prepared in anticipation of litigation or for trial by or for another party * *.* only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

{¶ 11} This rule also states, "In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." In order to obtain discovery of attorney work product, the proponent must show both substantial need and undue hardship. *Castle v. Sangamo Weston, Inc.* (C.A.11, 1984), 744 F.2d 1464, 1467. However, when the work product involves the attorney's mental impressions, conclusions, opinions, or legal theories, such a showing will not suffice because this "opinion work-product" enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances. *Cox v. Admr. U.S. Steel & Carnegie* (C.A.11, 1994), 17 F.3d 1386, 1422. In requesting the deposition of Roberts, UHHS Bedford requested the deposition only after both Dr. Aiello and Vajdik testified that Roberts actually wrote their expert reports. After requesting Roberts's deposition, UHHS Bedford submitted that it sought her deposition solely to establish bias and challenge the credibility of the expert witnesses.

{¶ 12} In conjunction with Civ.R. 26(C), Cuyahoga County Local Rule 21.1(A), entitled "Trial Witness," requires that "each counsel shall exchange with all other

counsel written reports of medical and non-party expert witnesses expected to testify in advance of the trial." The testifying experts and the bases of their opinions must be disclosed in compliance both with Civ.R. 26(C) and C.P.Loc.R. 21.1.

{¶ 13} Although the estate disclosed the expert reports, the testimony at deposition revealed several inconsistencies regarding the ultimate creation of the expert reports. Dr. Aiello's deposition clearly indicated that his expert report contained words chosen by someone else and that "there were many things that were better expressed by someone who knows how to do this." The issue in this case is complicated by the fact that *both* expert witnesses admitted at deposition that they were not the sole or initiating authors of the expert reports on which they relied.

{¶ 14} At oral argument, counsel for the estate asserted that a paralegal's preliminary creation of an expert report is commonplace. However, this court can find no case law or other indicia that this is so commonplace as to negate the need to depose Roberts on this single issue. A review of Ohio case law suggests that expert reports must be authored by the expert who is testifying. While the dissent contends that Ahava misses the distinction between the reports themselves and the mental processes that went into creating them, the trial court's order of Roberts's deposition goes solely to the issue of how the reports were generated, protecting any intrusion into the mental processes that went into creating the reports. In *Reliance Ins. Co. v. Keybank U.S.A., Natl. Assn.* (N.D.Ohio 2006), 2006 WL 543129, the court addressed this very issue and distinguished "fact" and "mental impressions" as they relate to a claimed work-product privilege.

{¶ 15} In *Keybank,* the court was faced with defense counsel's motion to compel production of documents constituting a draft expert report. The motion to compel was filed after plaintiff's expert witness explained that plaintiff's counsel "assisted" him in writing the report. Keybank moved to compel production of the "notes" between the attorney and its expert; however, opposing counsel claimed that the notes were protected by the work-product doctrine.

{¶ 16} The court analyzed the request and distinguished between "fact work product," which consists of the "written or oral information transmitted to the attorney and recorded as conveyed by the client and may be obtained upon a showing of substantial need and the inability to otherwise obtain the information," and "opinion work-product," which is any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories. See *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation* (C.A.6, 2002), 293 F.3d 289. *Keybank* noted the holdings of several other courts that had found that when an expert reviews materials otherwise protected by the work-product

doctrine, the disclosure requirements contained in Fed.R.Civ.P. 26(a)(2)(b) trump the nondisclosure protections afforded under Fed.R.Civ.P. 26(b)(3). Using this holding, the court found that plaintiff's attorney, in assisting its expert with this report, was not acting in his capacity as a lawyer, but instead, was acting simply as a conduit between the expert and the secretary who typed the report. For this reason, any claim of work-product protection was inapplicable.

{¶ 17} *Keybank* also held that although the Federal Rules contemplate that an attorney may provide assistance in the preparation of the report, "the assistance of counsel contemplated by Rule 26(a)(2)(B) is not synonymous with ghost-writing." Id. citing, *Manning v. Crockett* (May 18, 1999), N.D.Ill. No. 95 C 3117, 1999 WL 342715.

{¶ 18} In the instant case, it is clear from the trial court's order that it recognized the limits of allowing such a deposition to take place and therefore did not permit the defendants unfettered access to Roberts to discover thoughts and strategies for trial. Instead, the trial court limited the inquiry to specific questioning regarding the sole issue of how the estate's expert reports were generated. Therefore, the only method to determine how the expert report was authored is to depose Roberts on this single, narrow issue.

{¶ 19} The dissent also characterizes one of the issues in the case as whether Roberts's participation in the drafting of the proposed experts' reports removes the work-product privilege. As in the situation in *Keybank,* this characterization underplays Roberts's precise role. As previously discussed, Vajdik testified that she gave her opinions to Roberts over the phone, that she does not know whether Roberts transcribed these opinions, that she failed to dictate her opinions and instead merely had a "conversation" with Roberts, and that she was "unsure of how [Ms. Roberts] took down the information that [she] gave her." While it was suggested that the practical effect of allowing Roberts's deposition would be "disastrous," it would be arguably equally disastrous to allow attorneys or their employees to generate a report in such a way that makes the use of an "expert" merely a rubber stamp of a report generated in-house.

{¶ 20} We recognize that the issue of allowing a paralegal to be deposed may lead to a slippery slope; however, because of the very specific and extremely narrow nature of the trial court's order, and because the ruling was based on a highly unusual set of facts, we hold that the trial court properly avoided the pitfall of allowing an improper blanket deposition and allowed the deposition to proceed on only this very narrowly defined issue. For these reasons, and solely because of the specific nature of the trial court's order, the estate's sole assignment of error lacks merit.

{¶ 21} The ruling of the trial court is affirmed.

Order affirmed.

KARPINSKI, P.J., concurs.

MCMONAGLE, J., dissents.

KARPINSKI, P.J., concurring.

{¶ 22} I concur with the lead opinion but write separately to clarify a few points.

{¶ 23} The dissent emphasizes that "the expert report at issue here is not evidence, it is discovery." But so too is the requested deposition of Barbara Roberts. However, both the expert report and the deposition could become useful and admitted into evidence if the experts deviate from their reports or witnesses contradict their depositions. Further, whether Barbara Roberts would even need to be called to testify would depend, in part, upon her deposition. A trial is more efficient when depositions are provided beforehand. Moreover, the trial court has carefully narrowed the limits of that deposition.

{¶ 24} One issue here is the credibility of an expert who has admitted significant assistance in the preparation of his report. That credibility would depend, in part, upon the nature and extent of the assistance received. Thus, a limited deposition of Roberts, who provided that assistance, is reasonable.

{¶ 25} Ignoring credibility as a question, the dissent has defined the purpose of the defense, however, as "a thinly veiled attempt to disqualify counsel." I see nothing whatsoever in the record to support this extrapolation. Nor do I foresee the doomsday that the dissent forecasts will follow from the quite careful and narrow ruling of the trial court. Law is often a matter of balancing. Here, the right to discover the nature and extent of the assistance provided to experts in preparing their reports is balanced against the limits to discovery when the work-product doctrine is invoked.

MCMONAGLE, J., dissenting.

{¶ 26} Respectfully, I dissent and would reverse the trial court's judgment.

{¶ 27} Plaintiff-appellant, William R. Stanton, administrator of the estate of Margaret F. Stanton, appeals from the trial court's order denying the estate's motion for a protective order and ordering a nurse/paralegal who works for the estate's attorney to appear for deposition. The legal and practical effect of such a ruling is significant.

{¶ 28} On February 17, 2004, the estate initiated suit against defendants-appellees UHHS Bedford Medical Center, Ahava Health Care and Gemcare Holdings, seeking damages for wrongful death, violations of nursing-home resi-dent's rights, and negligence relative to the death of Ms. Stanton. The complaint

also sought damages for malice and disregard for the safety and well-being of Ms. Stanton.

{¶ 29} During the course of discovery, defendant-appellee UHHS Bedford Medical Center deposed the estate's experts, Cheryl Vajdik, R.N., and Stephen Aiello, M.D. Both nurse Vajdik and Dr. Aiello testified during their respective depositions that a paralegal/nurse, Barbara Roberts, who is employed by the estate's counsel, telephonically conferenced with them and then prepared drafts of proposed reports for their review. During their lengthy testimony, both nurse Vajdik and Dr. Aiello remained steadfast that after their review and changes, if any, they adopted in totality the reports as drafted by Roberts. The reports were provided, as required by law, during discovery.

{¶ 30} Counsel for appellees subsequently requested the deposition of Roberts. The estate refused to allow Roberts to be deposed and moved for a protective order. The trial court denied the motion for a protective order, ruling, "Defendant may depose Plaintiff's nurse paralegal only on the issue of how Plaintiff's expert reports were generated." The instant appeal followed.

{¶ 31} Civ.R. 26(C) governs protective orders and states, "[T]he court in which the action is pending may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Our standard of review of a trial court's ruling on a motion for a protective order is abuse of discretion. *Arnold v. Am. Natl. Red Cross* (1994), 93 Ohio App.3d 564, 639 N.E.2d 484. An abuse of discretion connotes more than an error in judgment, but rather implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 32} In its sole assignment of error, the estate contends that requiring Roberts to be deposed would intrude upon the work-product privilege of its counsel. Appellee UHHS Bedford Medical Center "agrees with the Stantons' contention that a paralegal working at the direction of a lawyer is entitled to the same work-product privilege as the lawyer[,]" but argues that "[t]he privilege, however, does not apply in this case." Moreover, UHHS Bedford Medical Center argues that the estate waived the work-product privilege.

{¶ 33} Appellees Ahava Health Care and Gemcare Holdings argue that conversations between the estate's counsel and the experts involving preparation of the reports do not implicate the work-product privilege. Ahava Health Care and Gemcare Holdings further contend that the bases of the reports must be explored because they may rely upon impermissible hearsay. They also argue that if work-product privilege is implicated, it was waived by the estate's exchange of the reports with opposing counsel during discovery.

{¶ 34} Appellees' arguments somehow seem to imply that the experts' reports themselves are evidence in this case. They are not. The experts' reports are discovery: they notify the opposing side of what the experts are going to say at deposition and/or trial. They are notice; nothing less, nothing more. The evidence is the experts' testimony. How the notice (i.e., the experts' reports) was prepared is irrelevant. What is relevant is the testimony itself.

{¶ 35} Initially, I would hold that the issue of how the experts' reports were generated implicates nothing but the work-product privilege. Civ.R. 26(B)(4), labeled "Trial preparation: experts," provides:

{¶ 36} "(a) Subject to the provisions of subdivision (B)(4)(b) of this rule and Rule 35(B), a party may discover facts known or opinions held by an expert retained or specially employed by another party in anticipation of litigation or preparation for trial only upon a showing that the party seeking discovery is unable without undue hardship to obtain facts and opinions on the same subject by other means or upon a showing of other exceptional circumstances indicating that denial of discovery would cause manifest injustice.

{¶ 37} "(b) As an alternative or in addition to obtaining discovery under subdivision (B)(4)(a) of this rule, a party by means of interrogatories may require any other party (i) to identify each person whom the other party expects to call as an expert witness at trial, and (ii) to state the subject matter on which the expert is expected to testify. Thereafter, any party may discover from the expert or the other party facts known or opinions held by the expert which are relevant to the stated subject matter. Discovery of the expert's opinions and the grounds therefore is restricted to those previously given to the other party or those to be given on direct examination at trial."

{¶ 38} Appellees Ahava Health Care and Gemcare Holdings argue that a distinction exists between Civ.R. 26(B)(4)(a) and (b). In particular, they argue that subsection (a) contains the work-product privilege and governs experts who are not going to testify at trial, while subsection (b) governs experts who are going to testify at trial and is not subject to the work-product doctrine. However, the very language of Civ.R. 26(B)(4)(b) provides that it applies "[a]s an alternative or in addition to obtaining discovery under subdivision (B)(4)(a) of this rule." Thus, subsections (a) and (b) of Civ.R. 26(B)(4) are not mutually exclusive.

{¶ 39} Counsel's argument, therefore, misses the key distinction between the reports themselves and the mental processes that went into creating the reports. Certainly, any party who intends to call an expert to testify on his or her behalf at trial must supply the expert's report to all the parties in the case. See Civ.R. 16 and Loc.R. 21.1. However, the mental processes that went into creating the reports are afforded special protection. To that end, Civ.R. 26(A) sets forth the general policy regarding discovery and provides:

{¶ 40} "It is the policy of these rules (1) to preserve the right of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (2) to prevent an attorney from taking undue advantage of his adversary's industry or efforts."

{¶ 41} Moreover, Roberts, as an *agent* of counsel, was afforded the same privilege as was counsel. The Supreme Court of Ohio has held that an attorney's nonlawyer employees work at the direction and discretion of the attorney. *Community Mut. Ins. Co. v. Tracy* (1995), 73 Ohio St.3d 371, 374, 653 N.E.2d 220. Indeed, the court recognized that " '[d]elegation of work to nonlawyers is essential to the efficient operation of any law office.' " Id., quoting *Disciplinary Counsel v. Ball* (1993), 67 Ohio St.3d 401, 404, 618 N.E.2d 159.

{¶ 42} Thus, Roberts, while working at the direction and discretion of the estate's counsel, was afforded the same privilege as counsel. To hold otherwise would negate the purpose of lawyers being able to delegate work to nonlawyers for the efficient operation of their practices.

{¶ 43} The majority cites *Reliance Ins. Co. v. Keybank U.S.A., Natl. Assn.* (N.D.Ohio 2006), 2006 WL 543129, a federal trial court discovery decision, in support of its position that appellees may depose the estate's attorney's agent as to how the expert reports in this case were prepared. That case bears little relationship to the case at bar. In *Reliance,* the matter before the court was Keybank's motion to compel production of notes constituting a draft of an expert report. No request was made whatsoever for the testimony of a lawyer involved in the case. In the case, there was an agreement between Keybank and one of the third-party defendants, Swiss Reinsurance, that they would exchange all drafts of their respective expert reports. Swiss Reinsurance claimed that the notes were not drafts because they were not shown to the expert. It further claimed that they were not work product. *Reliance* held that "the notes constituted a 'draft' of the opinion," and hence pursuant to the agreement of the parties, must be turned over. Id. at ——. Further, it should be noted that the court applied the "work-product doctrine" under Fed.R.Civ.P. 26(b)(3). But this application must be analyzed in conjunction with Fed.R.Civ.P. 26(a)(2)(B), which provides, "Except as otherwise stipulated or directed by the court, this disclosure with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness." No such analogous language exists in the Ohio Rules of Civil Procedure.

{¶ 44} In short, *Reliance* involves the production of documents, not the deposition of counsel. It was decided in part upon an agreement of the parties

that all drafts of expert reports would be exchanged and upon the court's finding that the notes were drafts. Finally, the court decided the work-product issue in favor of production under Fed.Civ.R. 26, which specifically requires that the expert prepare his own report; no such requirement is in the analogous Ohio rule. *Reliance* is wholly inapplicable to the case at bar.

{¶ 45} That said, the issues in this case are: 1) whether appellees met their burden in requesting Roberts's deposition; 2) whether the fact that Roberts participated in the drafting of the proposed experts' reports somehow removes work-product privilege; 3) whether the estate waived the privilege by providing the reports during discovery; and 4) whether, despite the privilege, Roberts's deposition should be allowed in order to inquire about possible impermissible hearsay.

{¶ 46} As to the first issue, whether appellees met their burden, I would hold that the burden needed to order Roberts to submit to deposition has not been satisfied.

{¶ 47} As already mentioned, Civ.R. 26(B)(4) provides that "a party may discover facts known or opinions held by an expert * * * only upon a showing that the party seeking discovery is unable without undue hardship to obtain facts and opinions on the same subject by other means or upon a showing of other exceptional circumstances indicating that denial of discovery would cause manifest injustice."

{¶ 48} Appellees contend that they sought to depose Roberts solely to establish bias and challenge the credibility of the expert witnesses. Neither of those reasons rises to the required undue hardship or exceptional circumstance under Civ.R. 26(B)(4). Indeed, appellees had ample opportunity (and seized it) to attempt to establish bias and challenge the credibility of the experts during each of their respective depositions. To that end, appellees' counsel questioned each of the experts extensively about the fact that Roberts had prepared drafts of their reports, and the experts did not deny that fact. Thus, there are not "inconsistencies regarding the ultimate creation of the expert reports," as the majority holds.

{¶ 49} Moreover, appellees questioned the experts as to whether their testimony was "tainted" by conversations with counsel or counsel's agent. Whether that questioning itself is permissible under work-product doctrine is not at issue here. But deposing counsel or counsel's agent cannot advance that inquiry. Only the experts themselves are competent to testify upon that issue.

{¶ 50} In regard to the second issue, the privilege remains regardless of the fact that Roberts participated in the drafting of proposed reports. Appellee UHHS Bedford Medical Center argues that work-product privilege "does not

apply when a party uses the witness statement to create an expert report and then claims the report is the work of the expert." This argument is unpersuasive. The argument misses the critical point that *both experts adopted the reports drafted by Roberts.* The issue is not whether the report itself is work product—it is not; the report itself is clearly discoverable. The issue is whether the communication between counsel and the experts revolving around the preparation of the reports was work product; and, in fact, it is.

{¶ 51} Relating to the third issue, whether the estate waived the privilege, I would hold that providing the reports during discovery, as required by law, does not constitute a waiver of the work-product privilege.

{¶ 52} As already mentioned, Civ.R. 16 and C.P.Loc.R. 21.1 require that an opposing party be provided with the report of an expert who will testify at trial. Although the majority does not hold that the fact that the estate provided opposing counsel with the experts' reports constitutes a waiver of the work-product privilege, the majority states, "The testifying experts and the bases of their opinions must be disclosed in compliance with both Civ.R. 26(C) and Loc.R. 21.1." The testifying experts and the bases of their opinions *have* been disclosed. Again, the fact that the experts adopted the reports is of critical importance. The reports, as adopted by the experts, contained the bases of *their* opinions. Counsel for appellees could, and did, cross-examine the experts about those bases.

{¶ 53} The fourth issue, whether Roberts should be subject to deposition to inquire about the possibility of impermissible hearsay, is also meritless. Ahava Health Care and Gemcare Holdings argue that inquiry about this possible hearsay is required because "the expert witnesses are basing the terminology and phraseology of their expert opinions upon information provided by Paralegal Barbara Roberts." The majority holds that it cannot find any "indicia that this is so commonplace as to negate the need to depose Ms. Roberts on this single issue." Lawyers providing the terminology for experts, however, is precisely how experts reach certain conclusions. It is not generally, for example, in doctors' vernacular to state that "to a reasonable degree of medical certainty," a certain result came about. Rather, lawyers introduce such phrases and standards and question experts as to whether the phrases and/or standards are applicable to the case.

{¶ 54} Similarly, in other areas of discovery, it is the lawyer who usually provides the phraseology and/or standards for the parties. Parties generally do not write stipulations or respond to interrogatories or requests for admissions; their attorneys do, in consultation with the parties. The parties may confirm, modify, or deny that which has been prepared, but they are generally not the sole preparers of the work. That is exactly what occurred during discovery in this

case; after consultation with the witnesses, Roberts drafted proposed reports that both experts ultimately adopted and upon which both experts were subject to cross-examination as to preparation and content. Thus, the experts did in fact "author" the reports.

{¶ 55} In sum, in a situation such as the instant one in which an agent for an attorney prepared the experts' draft reports after interviewing the experts, the reports were subsequently adopted by the experts, and the experts were deposed at length as to the contents of the reports, the agent must not be subject to a "limited deposition" as to his or her mental processes.[1] Holding otherwise does not reflect the law. Roberts, the agent, is protected by the work-product privilege; appellees have not overcome their burden to get at Roberts's work product, and the work-product privilege was not removed or waived.

{¶ 56} In addition to the majority's holding not comporting with the law, the practical effect of the majority's holding could be disastrous. In particular, such holding will open the door to attorneys, paralegals, secretaries, law clerks, and any other agent of an attorney who is working under the direction and discretion of the attorney to be subject to deposition, based solely upon their participation in preparing discovery. In fact, by subpoenaing any one of these persons, opposing counsel would force them to withdraw pursuant to Ohio Disciplinary Rule DR 5–102. No power is likely to be more misused than the power to de facto remove an opponent's counsel from a litigation.

{¶ 57} I fear the tactics that likely will arise from the trial court's ruling, even in its limited fashion. Moreover, I fear that such a ruling will not only open the door to such tactics in regard to the preparation of expert reports, but also in regard to the preparation of stipulations and responses to interrogatories and admissions.

{¶ 58} The majority in this case analyzes the issue of the propriety of deposing counsel for the estate as though the expert report at issue were evidence in the case and there is a conspiracy between counsel and the expert to manufacture evidence or create misleading evidence for the jury. It cannot be overemphasized that the expert report at issue here is not evidence; it is discovery. The testimony of the expert is the evidence, and no one has even suggested that the witnesses may not be deposed on the sources and bases of their opinions. The request of the defense to depose the estate's counsel is a thinly veiled attempt to disqualify counsel, and the natural and probable consequence of the holding of the

---

1. Experience teaches that a "limited deposition" is an oxymoron. A "limited deposition" in practice is just a regular deposition replete with objections and phone calls to the court seeking immediate rulings as to those "limits."

majority is the legal right to depose lawyers on their participation in the preparation of any and all discovery responses.

{¶ 59} Therefore, I would reverse the trial court's order and grant a protective order as to the proposed deposition of the estate's attorney's paralegal.